**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

U.S. ex rel. JOHN PATTON                    CIVIL ACTION

VERSUS                                      NO. 08-4325

SHAW SERVICES, LLC                          SECTION "J"


**ORDER AND REASONS**

Before the Court are two motions of Defendant, Shaw Services, LLC: Defendant's **Motion to Dismiss Retaliation Claim or Alternatively, Motion for Partial Summary Judgment** (Rec. D. 13) and **Motion to Dismiss False Claims Act Claim** (Rec. D. 14). As to both motions, because other material outside the pleadings was presented to and not excluded by the Court, the motions were treated as Fed. R. Civ. P. 56 motions for summary judgment. Having considered the motions and legal memoranda, the record, and the law, the Court finds that **Defendant's Motion for Partial Summary Judgment on Retaliation Claim and Defendant's converted Motion for Summary Judgment on False Claims Act Claim** are **GRANTED.**

**BACKGROUND**

Plaintiff, John Patton, filed a complaint against Shaw Services LLC ("Shaw") on September 8, 2008 pursuant to two provisions of the False Claims Act ("FCA"), 31 U.S.C. §

1

3729(a)(1)(A)-(B), and its accompanying retaliation provision, 31 U.S.C. § 3730 (h). Plaintiff alleges that Defendant's defective work and/or subsequent claim for payment or approval was fraudulent in violation of the FCA. Plaintiff further alleges that he was terminated in retaliation in violation of § 3730(h). (Rec. Doc. 1). Plaintiff initially filed as Relator for the United States but the United States filed a Notice of Election to Decline Intervention on June 29, 2009. (Rec. Doc. 6.)

Plaintiff was employed by Defendant Shaw from May 27, 2008 to July 23, 2008 as a carpenter on a project at the Louisiana State Transportation Center. This project was funded, in part, by the United States. Plaintiff alleges in his Complaint that Defendant engaged in improper construction, specifically: (1) failure to use rebar chairs; (2) removal of rebar from the west wall; (3) inadequate doweling for intersecting walls; (4) improper application of "form release agent"; and (5) improper splicing of horizontal rebar. (Rec. Doc. 1). Plaintiff further alleges that Defendant was paid for this work by presenting false or fraudulent claims or making a false record or statement for work not done correctly. Id.

Plaintiff alleges he made numerous complaints to an on-site supervisor, Brian Powell, to off-site Shaw human resources personnel, and off-site Shaw management, including Vice President of Quality Control, Virgil Barton. Plaintiff maintains that his

2

reports of improper construction, particularly about Shaw foreman Steve Mason's method of back filling with dirt and the resultant concrete blowouts, caused Mason to "make life difficult" for him.

Plaintiff claims that during a meeting in the office of Randy Clouatre, Sr., the Shaw Site Manager, he "was fired after he reviewed all the false claims construction mistakes" and "requested they be fixed." Plaintiff alleges that he threatened to report the violations to state and federal authorities, and had, in fact, already reported the violations to the state authorities. Plaintiff alleges that his "complaints to the governmental entities were known to defendant" and that "Defendant created a hostile work environment for plaintiff that culminated in his discharge on July 23, 2008 because of his complaints about the practices identified." (Rec. Doc. 1).

According to Defendant, "Mr. Patton was terminated for walking off the job after being insubordinate to his foreman by arguing how to perform grade beam form work assigned to him." Defendant alleges that, on the morning of July 23, 2008, Plaintiff "got upset with, screamed, and cursed at Steve Mason, his foreman." Mr. Mason and Brian Powell, a Shaw Civil Superintendent, later reported the incident to Randy Clouatre and asked to have Patton removed from the job. Clouatre maintained that he did not intend to fire Plaintiff and tried to calm him down."After being repeatedly informed that he had to calm down,

Mr. Patton stormed out and left the job site." Clouatre Affidavit at ¶ 20.

Defendant filed two dispositive motions, a Motion to Dismiss Retaliation Claim or Alternatively, Motion for Partial Summary Judgment (Rec. D. 13) and Motion to Dismiss False Claims Act Claim (Rec. D. 14). The first motion, presented alternatively, is treated here as a motion for partial summary judgment. Defendant presented extrinsic materials that were considered in deciding the motion. Therefore, it could not properly be considered as a motion to dismiss. The second motion, presented only as a motion to dismiss, was subsequently converted into a motion for summary judgment for the same reason. The parties were given 14 days to supplement their briefing.

## DISCUSSION

**PARTIES ARGUMENTS:**

*Retaliation Claim*

Defendant denies any knowledge of Plaintiff's alleged complaints and argues that Plaintiff cannot establish one or more necessary elements of a claim for FCA retaliation. Defendant argues that for Plaintiff to prevail on his FCA retaliation claim, Plaintiff must show (1) that he engaged in conduct protected by the FCA; (2) that Defendant had knowledge of Plaintiff's protected activity; and (3) that Defendant retaliated

4

against him[1] because of that protected activity. 31 U.S.S. § 3730(h). Defendant argues that even if Plaintiff can show he engaged in protected activity, which Defendant denies he did, Plaintiff cannot show that Defendant knew of the protected activity before Plaintiff was terminated or that Defendant retaliated against him "because of" it. Memo in Support at 9. Defendant supports its motion with a number of affidavits, handwritten statements, and internal documentation.

Defendant argues that the alleged conduct was not "protected activity" under the FCA. Defendant further argues that Plaintiff cannot show that Defendant knew about any protected activity before he was terminated or that Shaw retaliated against him because of it.

Defendant argues that Plaintiff's claim fails, as a matter of law, on the element of Defendant's knowledge. Defendant cites numerous federal court decisions that emphasize the legislative history of the FCA, namely that a "whistleblower must show the employer had knowledge the employee engaged in 'protected activity.'" S. Rep. No. 345, 99th Cong., 2d Sess. 35 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5300. Defendant points out that Plaintiff failed to allege in his complaint when his

---

[1] The Act lists the following actions taken against an employee that could constitute retaliation: discharge, demotion, suspension, threats, harassment, or any other manner of discrimination against the terms and conditions of employment. 31 U.S.S. § 3730(h).

objections were raised. Defendant argues that this is "because [Plaintiff's] complaints, even if they rose to the level of protected activity, which is denied, did not occur until after his termination."

Finally, Defendant argues that because any action Plaintiff took did not rise to the level of "protected activity" under the FCA, and because Defendant had no knowledge of any alleged protected activity, it is impossible that Defendant could have terminated Plaintiff "because of" that activity within the meaning of § 3730(h). Defendant submitted a body of evidence indicating grounds for termination wholly independent of any alleged protected activity of Plaintiff.

Plaintiff alleges in his complaint that he "objected internally repeatedly, several times to the State of Louisiana, and several times to the federal government" and that Defendant knew of the complaints to the governmental entities. (Rec. Doc. 1) In his opposition, Plaintiff alleges that approximately one and a half months prior to the incident with Steve Mason, he complained to the human resources office about Mason's back filling methods.(Rec. Doc. 23) Plaintiff also alleges that, several days prior to his termination, he called Fred Witekamm of the Louisiana Department of Transportation and Development to report the FCA violations. Id. Plaintiff argues, based upon these allegations, that he was retaliated against within the meaning of

§ 3730(h).

Defendant filed a reply memorandum to Plaintiff's opposition in which it argues that Plaintiff has not carried his burden under Fed. R. Civ. P. 56 and cannot overcome Defendant's motion for summary judgment. (Rec. Doc. 27). Defendant also argues that any disagreement Plaintiff had about the construction methods used does not constitute protected activity under the FCA.

*False Claims Act Claim*

Plaintiff False Claims allegations, which track the language of the FCA, can be broken down into two parts: (1) that Defendant's knowing presentation of a false or fraudulent claim for payment or approval was in violation of the FCA and/or (2) its knowing creation or use of a false record or statement to get a false or fraudulent claim paid or approved by the United States Government was in violation of the FCA.

Defendant argues that Plaintiff failed to sufficiently plead an FCA claim under §3729(a)(1)(A). Defendant argues that United States Supreme Court and Fifth Circuit precedents require pleading of false claims with particularity. Defendant argues specifically that the Fifth Circuit, in order for liability to be triggered under this section, requires (1) presentment; (2) of a false or fraudulent claim; (3) undertaken knowingly; (4) that is material. Defendant argues that claims submitted by it, material

7

to receipt of payment from the United States Government, were not false.

Defendant argues that following its decision in <u>U.S. ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180 (5th Cir. 2009),the Fifth Circuit requires that a plaintiff, in order to sufficiently plead presentment of a false or fraudulent claim, must allege either: (1) specific details of an actually submitted false claim; or (2) particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted. Defendant argues that Plaintiff alleges neither.

Defendant further argues that Plaintiff failed to sufficiently plead an FCA claim under §3729(a)(1)(B). Defendant argues that Plaintiff has failed to show that Defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government as required. Instead, Defendant argues, Plaintiff merely provides conclusions.

Plaintiff argues in his opposition that the motion should be denied based on the fact that by attaching supplemental materials, he has met his burden by identifying specific code violations. Furthermore, Plaintiff avers that he does not have access to the material which would prove the false claims. However, Plaintiff argues that Defendant is on notice of the allegations and with pointed discovery Plaintiff could uncover

the scheme.

Upon conversion of the motion under Fed. R. Civ. P. 12(d), the parties submitted supplemental memoranda to address whether Plaintiff can raise a genuine issue of material fact to preclude summary judgment.

Defendant argues that none of the allegedly defective methods it employed were in violation of the contract, its specifications, or other incorporated sources (Contract Documents). In other words, although Plaintiff disagreed with Defendant's practices, Defendant was not contractually required to employ any of the methods that Plaintiff advocates. Accordingly, any claims made to the United States for payment could not be fraudulent because the work was being done to contract specifications.

Plaintiff argues that Defendant deviated from the "required standards" in the five areas of defective construction identified in his complaint and submits the affidavit of Ladd Ehlinger, a member of the American Institute of Architects (AIA), to support his contentions.

**LAW AND ANALYSIS**

*Motion to Dismiss Retaliation Claim or Alternatively,*
*Motion for Partial Summary Judgment on Retaliation Claim*

When considering a motion to dismiss for failure to state a

claim upon which relief can be granted, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The required notice for this type of conversion may be constructive and the act of dual-labeling a motion to dismiss as a motion for summary judgment in the alternative is sufficient. See Riehm v. Engelking, 538 F.3d 952, 962 n.5 (8th Cir. 2008). Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986); see also, Taita Chem. Co. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir.2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir.1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to

the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." <u>Engstrom v. First Nat'l Bank of Eagle Lake,</u> 47 F.3d 1459, 1462 (5th Cir.1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." <u>See Hopper v. Frank,</u> 16 F.3d 92 (5th Cir.1994); <u>Lujan v. Nat'l. Wildlife Fed'n.,</u> 497 U.S. 871, 871-73 (1990); <u>Donaghey v. Ocean Drilling & Exploration Co.,</u> 974 F.2d 646, 649 (5th Cir.1992).

Defendant has met its burden as the moving party on summary judgment. Defendant brought forward evidence that casts doubt on Plaintiff's ability to satisfy essential elements of his claim. Although Plaintiff's complaint alleges that he made objections to certain methods employed at the project site, he generally does not allege when he objected, internally or otherwise, and where he provides specific dates, he fails to provide any support for his allegations. The complaints that Plaintiff alleges he made to management are unsupported apart from his own sworn declaration that they, in fact, occurred. Plaintiff speculates in a footnote in his opposition that he "may be able" to show that Witekamm made a site visit by deposing him and having relevant documents produced.

Further, in addressing the knowledge requirement of his claim, Plaintiff's Complaint includes one line that states simply:

11

"[Plaintiff's] complaints to the governmental entities were known to Defendant." (Rec. Doc. 1). Plaintiff, in another footnote in his opposition, states his belief that "he can show this knowledge on the part of all three managers (Clouatre, Powell, and Mason) because they commuted to and from Baton Rouge with other employees and discussed plaintiff en route." However, this showing, if it could in fact be made, should have been made in opposition to the Defendant's motion for partial summary judgment.

Defendant provides ample evidentiary material corroborating its account and refuting Plaintiff's allegations. Along with the affidavit of Randy Clouatre, Defendant attached to its Motion and Memorandum in Support the affidavits of Jeff Chenier, Director of Craft Staffing, and Kerry David, Chief Compliance Officer for Defendant. The Chenier Affidavit includes the following attachments: internal memorandum from Randy Clouatre to Jeff Chenier regarding Plaintiff's termination, statements submitted to Chenier from Steve Mason, co-worker Daryl Hunt, and Brian Powell all in connection with Plaintiff's termination, and an internal form styled Separation Notice Alleging Disqualification that was filled out after Plaintiff's termination. Each piece of supporting evidence recounts the same events that led to Plaintiff's termination and none includes any knowledge of complaints by the Plaintiff or any causal relation between any alleged complaints and Plaintiff's termination. Further, the David Affidavit states that

12

Plaintiff did not make a complaint on the Defendant's hotline, Speak Up, until July 27, 2008, four days after Plaintiff was terminated. Plaintiff asserts otherwise in his Complaint and opposition but, again, offers no support aside from his own sworn statement.

Plaintiff has failed to carry his burden under Fed. R. Civ. P. 56. Defendant produced competent summary judgment evidence that Plaintiff could not prove essential elements of his claim. Most convincing is Plaintiff's apparent inability to prove Defendant's knowledge or a causal connection between that knowledge and Plaintiff's termination. Plaintiff was required to go beyond the pleadings and produce evidence that showed the presence of genuine issue of material fact. Plaintiff's opposition and sworn statement, which largely rehashed his complaint and made unsupported allegations, cannot save his claim on a motion for summary judgment.

Additionally, Plaintiff, in his Memorandum in Opposition, mistakenly incorporates two footnotes, referenced *infra*, as Fed. R. Civ. P. 56(e) requests. Plaintiff presumably seeks relief under Rule 56(f), not 56(e). Rule 56(f) provides:

> If a party opposing the motion shows by affidavit
> that, for specified reasons, it cannot present
> facts essential to justify its opposition, the

13

court may:

(1) deny the motion;

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order. Fed. R. Civ. P. 56(f).

The footnotes that Plaintiff seeks to incorporate pertain to his belief that he "may be able to show a visit by Witekamm to the site before he was fired by deposing Witekamm and obtaining his production of relevant documents" and his belief that he can demonstrate the knowledge of his three managers because they commuted to and from Baton Rouge with other employees and discussed Plaintiff during those times.

The Court agrees with Defendant that Plaintiff's requests do not comply with the requirements of Rule 56(f) and are, therefore, denied. The rule requires a showing, by affidavit, of specified reasons that Plaintiff cannot present essential facts to justify his opposition. Plaintiff's footnotes in his opposition fall far short of the rule's requirements. If it was his belief that he could discover additional information, Plaintiff should have done so prior to opposing the motion. If Plaintiff was truly unable to for specified reasons, he should have filed an affidavit laying out those reasons in compliance with the rule.

*Converted Motion for Summary Judgment on False Claims Act Claim*

As stated above, on motions to dismiss under Fed. R. Civ. P. 12(b)(6), courts generally may not consider material outside the pleadings. However, "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Accordingly, the question is no longer whether Plaintiff adequately plead his claim but whether Plaintiff has carried his burden on summary judgment. Because this motion was presented only as a motion to dismiss and not in the alternative as with the first motion, the parties were given an additional 14 days to supplement their briefing. (Rec. Doc. 36).

Defendant grounds its motion on the assertion that the work Plaintiff claims to be defective was, in fact, not defective and was in compliance with the project's contract specifications. It addresses the material submitted previously by Plaintiff in his initial opposition to Defendant's motion to dismiss. Plaintiff submitted an excerpt of the 1992 edition of the American Concrete Institute's "Building Code Requirements for Reinforced Concrete" and an excerpt from the Sixth Edition textbook *Design of Concrete Structures* copyrighted in 1958. Defendant points out not only that both of these authorities are out of date but, more importantly, that they were in no way incorporated into the Contract Documents.

Defendant had no obligation to conform to any guidelines set out in these authorities as they formed no part of the construction contract. Specifically, the five alleged defects that Plaintiff may have executed differently does not render them defective in the sense that they violated the Contract Documents such that a subsequent claim for payment would be a fraud on the government. Plaintiff is unable to satisfy the false or fraudulent claim element of his FCA claim.

In fact, Sizeler, Thompson, Brown, an architectural firm privately retained as a representative of the Department of Transportation and Development (DOTD), inspected the work weekly and provided DOTD with field reports. (Rec. Doc. 39). None of the field reports indicated that Defendants work was not in compliance with the Contract Documents.

The affidavit of Mr. Ehlinger submitted by Plaintiff as well as the additional materials on concrete structures do not create a genuine issue of material fact. While they arguably support Plaintiff's view on how certain tasks should be done, they do not change the fact that Defendant was not required under its contract to perform the tasks as Plaintiff would like.

Again, Defendant has satisfied its burden on summary judgment. Defendant has demonstrated that there is no genuine issue of material fact as to whether its allegedly defective work was in violation of its contract. Accordingly, if the work was not in

violation of the contract, then Plaintiff's FCA claim is without merit and Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment on Retaliation Claim and Defendant's converted Motion for Summary Judgment on False Claims Act Claim are **GRANTED**.

New Orleans, Louisiana this the 23rd day of March, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE